(September 19, 1912.)

## STATE, Respondent, v. N. S. SAGE, Appellant.

[126 Pac. 403.]

EMBEZZLEMENT—EVIDENCE OF—SECRETION OF BANK CHECKS—INSTRUCTIONS.

(Syllabus by the court.)

1. Evidence *held* sufficient to support the verdict of guilty.

2. On a charge of embezzlement the intent may be established either by direct or circumstantial evidence.

3. Sec. 7068, Rev. Codes, defines the crime of embezzlement.

4. Sec. 7071, Rev. Codes, declares that a distinct act of taking is not necessary to constitute embezzlement.

5. Sec. 7072, Rev. Codes, provides that any evidence of debt, negotiable by delivery only and actually executed is the subject of embezzlement, whether it has been delivered or issued as a valid instrument or not.

6. The practice of citing authorities at the foot of an instruction and giving them to the jury is disapproved.

7. Other assignments of error in regard to instructions given to the jury examined and *held* to contain no merit.

APPEAL from the District Court of the Sixth Judicial District for Bingham County. Hon. James M. Stevens, Judge.

The defendant was prosecuted on a charge of embezzlement and convicted and sentenced for a term of from one to fourteen years in the state penitentiary. Judgment *affirmed*.

St. Clair & St. Clair and Hansbrough & Gagon, for Appellant.

A secreting with intent to convert to one's own use does not prove the offense under an information charging an actual embezzlement. (*McAleer v. State,* 46 Neb. 116, 64 N. W. 358.)

In a prosecution for embezzlement, the evidence must clearly show the commission of the offense as charged and bring the act within the statute. (15 Cyc., p. 532; *People v. Goodrich,* 138 Cal. 472, 71 Pac. 509; *Rauguth v. People,* 186 Ill. 93, 57 N. E. 832; *State v. Vennum,* 67 Kan. 868, 74 Pac. 268; *Commonwealth v. Harris,* 168 Pa. 619, 32 Atl. 92; *Brace v. State,* 43 Tex. Cr. 48, 62 S. W. 1067; *Dix v. State,* 89 Wis. 250, 61 N. W. 760.)

To warrant a conviction for embezzlement in this case, the record must show that Sage was the agent of the Shelley Banking Company, that he had the possession or care of the checks in question, and that he converted the same to his own use with a felonious intent to steal the same. (*Hamilton v. State,* 46 Neb. 284, 64 N. W. 965; *People v. Hurst,* 41 Mich. 328, 1 N. W. 1027; *Beaty v. State,* 82 Ind. 228; *People v. Hemple,* 4 Cal. App. 120, 87 Pac. 227.)

The citing of authorities under certain instructions and not under others was prejudicial to the rights of the defendant, in that it was particularly emphasizing those particular instructions. (1 Brickwood's Sackett on Instructions, sec. 177; *State v. Cater,* 100 Iowa, 501, 69 N. W. 880.)

An instruction which permits a jury to convict an agent of embezzlement, without finding that by a felonious, adverse use or holding he deprived his principal of the property alleged to have been embezzled, is erroneous. (*Nelson v. State,* 86 Neb. 856, 126 N. W. 518.)

Under the information in this case, actual conversion and appropriation to defendant's use, with a felonious intent to deprive the owner thereof, was essential to a conviction, and the jury should have been so instructed. (*Chaplin v. Lee,* 18 Neb. 440, 25 N. W. 609; *McAleer v. State,* 46 Neb. 116,

64 N. W. 358; *Hamilton v. State,* 46 Neb. 284, 64 N. W. 965; *Higbee v. State,* 74 Neb. 331, 104 N. W. 748.)

D. C. McDougall, Attorney General, O. M. Van Duyn and J. H. Peterson, Assistants to the Attorney General, James E. Good, Prosecuting Attorney, and A. S. Dickenson, for Respondent.

If it has been proved that Sage had a motive to tamper with the reconciliation sheet and embezzle the said checks, and if it has been shown by evidence satisfactory to a jury that the changed figures were his figures, then it is just as positive as direct testimony that it was he who embezzled the checks. (*Fleener v. State,* 58 Ark. 98, 23 S. W. 1; *People v. Bidleman,* 104 Cal. 608, 38 Pac. 502; *State v. Baumhager,* 28 Minn. 226, 9 N. W. 704; *State v. Foster,* 1 Penne. (Del.) 289, 40 Atl. 939; *State v. Pierce,* 77 Iowa, 245, 42 N. W. 181.)

The intent to defraud the owner of it may be proven beyond a reasonable doubt, either by direct evidence or circumstances showing a fraudulent intent in a man's mind. (*United States v. Camp,* 2 Ida. 231 (215), 10 Pac. 226; *United States v. Harper,* 33 Fed. 471; Underhill on Criminal Evidence, secs. 282, 285; *People v. Royce,* 106 Cal. 173, 37 Pac. 630, 39 Pac. 524; *State v. Ezzard,* 40 S. C. 312, 18 S. E. 1025.) In a charge of this nature, evidence of secretion would be competent to determine intent, and an instruction in the language of the statute was entirely proper. (*People v. McDonald,* 2 Ida. 10 (14), 1 Pac. 345; *State v. Pierce,* 77 Iowa, 245, 42 N. W. 181; *State v. Baumhager, supra.*)

SULLIVAN, J.—The defendant was convicted of the crime of embezzlement and sentenced to a term in the state penitentiary for from one to fourteen years. The appeal is from the judgment and order denying a new trial. The jury found a general verdict of guilty and also found that the property alleged to have been embezzled was of the value of more than $60.

The record shows that the defendant was charged with having embezzled five certain checks belonging to the Bank

of Shelley, a corporation doing a banking business at Shelley, Idaho. It is charged that the defendant, as assistant cashier and director of said bank, embezzled said five checks, four of which aggregated the sum of $84.20, and the other, which was drawn by the defendant himself on said bank, was for the sum of $3,000, making the sum of all of said checks $3,084.20; that said checks were paid by the Standrod Bank of Blackfoot, Idaho, which bank charged them to the account of said Shelley bank, and forwarded them to the Shelley bank for credit, together with a statement slip, on April 5, 1910, which slip is called in the record a ''reconcilement'' sheet, which sheet contained the statement of the account of the Shelley bank with the Standrod bank to that date; that when said sheet was forwarded it contained an item under date of April 5th of $3,084.20; that when said statement was received by C. L. Hare, who was the cashier of the Shelley bank, it was in an open envelope, which it was claimed had been opened by the defendant and the item under date of April 5, 1910, had been erased, also the true balance between said banks of $5,548.44 had been cut off and the figures $2,446.24 put in their place, which figures, the evidence shows, were in the handwriting of the defendant; that said cashier reconciled the account as shown on the altered sheet, and made out and signed a reconcilement sheet acknowledging that the Shelley bank was indebted to the Standrod bank in the sum of $2,464.24, and then placed said receipt in a sealed envelope and put it in the mail basket containing the outgoing mail of said bank; that when said reconcilement receipt was received by the Standrod bank the figures $2,464.24 had been erased and the figures $5,548.44, in the handwriting of Sage, appeared on said receipt; that said Sage got most of the Shelley bank's mail from the postoffice during the months of April, May and June, 1910; that upon the receipt of the said slip for the month of April, 1910, the Shelley bank discovered that the books of the Standrod bank must show that the Shelley Banking Co.'s indebtedness to it was a greater sum than $2,464.24, as shown by said reconcilement sheet, from which the item containing the said five checks described

in the information had been erased. The $3,000 check was drawn by the defendant in favor of James C. McGarry, in adjustment of a land transaction and was mailed by the defendant to the drawee at Salt Lake, Utah, with some other papers. It was cashed at Beaver, Utah, and thereafter got into the possession of the Standrod bank at Blackfoot. It also appears that said reconcilement slip dated April 5, 1910, should have been received at the Shelley bank not later than the following day, April 6th. It evidently was received there at that time and a part of it cut off and the figures changed, as above stated. The evidence showing that the defendant had received it and had made the changes is based on the facts and circumstances that the defendant was in the habit of getting the mail for the bank, that the changed figures were in his handwriting; that he was interested in said matter, and that he was the only one who was sufficiently familiar with all of the facts to make the changes that were made in said reconcilement slip.

The defendant testified as a witness on his own behalf that the figures in said statement were not his figures, and we suppose he means by that, that he did not make them, although he does not testify directly that he did not—simply testified that they were not his figures. Three witnesses testified that they were familiar with the handwriting of defendant and that they identified said figures as being made by the defendant. The jury evidently believed that the changes in said reconciliation statement were made by the defendant.

The evidence is sufficient to show that said reconcilement statements were changed with fraudulent intent and, as held in the case of *State v. Foster,* 1 Penne. (Del.) 289, 40 Atl. 939, such intent may be established either by direct evidence or by the evidence of circumstances showing a fraudulent intent.

The defendant also testified that the first time he saw the checks referred to, except his own, was on the 16th of May, 1910; that he drew said $3,000 check on March 24, 1910, and the next time he saw it was on May 16, 1910. He de-

nies, in effect, that he saw said checks or had anything to do with them prior to said May 16th, and that he did not take the letter containing them out of the postoffice or open it. However, the jury apparently did not believe this evidence of defendant, but did believe from all of the facts and circumstances that the defendant did secrete said checks with fraudulent intent to appropriate to his own use, at least for a time, the amount represented by them.

It is contended by counsel for appellant that the evidence is insufficient to convict the defendant of embezzlement. Sec. 7068, Rev. Codes, defines the crime of embezzlement and is as follows:

"Every trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator or collector or person otherwise intrusted with or having in his control, property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

Counsel contends there is no evidence to show that said checks or the funds represented by them ever came into defendant's possession; that it shows no conversion to his own use or to any use of the checks or funds upon which they were drawn by said Sage or by anyone else. It is a well-established rule that before a person can be convicted of a crime the state must establish his guilt by legal evidence beyond a reasonable doubt, and that the burden is on the state to prove every fact and circumstance which is essential to establish the guilt of the defendant. While it is true there is no direct evidence to show that the checks in question ever came into the possession of the defendant, the circumstances as revealed by the evidence convinced the jury of the defendant's guilt, and as the jury was properly instructed by the court that they should not convict unless they were convinced beyond a reasonable doubt of the guilt of the defendant, they evidently, by their verdict, showed that they had no reasonable doubt of the defendant's guilt. Those checks

belonged to the bank, and they evidently were secreted with fraudulent intent to appropriate, at least for a time, the amount they represented to the use of someone, and the jury believed, no doubt, that it was done for the benefit of the defendant. Sec. 7071, Rev. Codes, provides that a distinct act of taking is not necessary to constitute embezzlement. Sec. 7072 provides that any evidence of debt, negotiable by delivery only and actually executed, is the subject of embezzlement, whether it has been delivered or issued as a valid instrument or not. Said checks were clearly the subject of embezzlement. However, it is not made clear to the court from the record why or for what purpose the defendant attempted to keep the bank in ignorance of the issuance of said checks from April 6, 1910, to May 9, 1910. The attorney general contends, on behalf of the state, that it was to secure the use of the money represented by the checks for that length of time, for had the checks been received by the bank on April 6th, the bank would then have charged the same up to the accounts of the proper parties, $3,000 of which would have been charged to the account of the defendant. Defendant thus, at least for a time, secreted said checks and changed the reconcilement receipts and fraudulently appropriated them to some use or purpose with fraudulent intent.

It is next contended that the court erred in giving certain instructions, by reason of the fact that certain authorities were cited under each of said instructions, and that the citation of such authorities was prejudicial to the right of the defendant, in that such instructions were particularly emphasized by such citations. It is also contended that by such citations the court made the jury the judges of the law as well as of the facts. There is no merit whatever in the latter contention. While it was improper, we cannot say that it was prejudicial error for the court to hand instructions to the jury that contained citations supporting them. We are aware that it is the practice of attorneys in preparing requested instructions to cite, for the benefit of the court, authorities upon which they base such instructions. That is proper and right, but where that is done such citations ought

to be stricken out or detached before the instructions are handed to the jury. No doubt, counsel who prepared such instructions and made said citations concluded that said instructions would be recopied or the citations detached therefrom before they were handed to the jury.

The defendant requested the following instruction: "You are instructed that the mere secreting by the defendant of the checks described in the information would not constitute an embezzlement thereof," which the court gave with the following modification: "Unless you find present the other necessary elements set forth in the information." Under the facts of this case and the law, it was not error for the court to modify said requested instruction as above indicated and then give it to the jury.

It is next contended that the court erred in giving instruction No. 3, which is as follows: "The court instructs the jury that the section of the statute under which this information is brought, reads as follows: . . . . " (Then proceeds to quote sec. 7068, Rev. Codes, which section is above quoted.)

It is contended that the portion of said instruction which reads, "or secretes with a fraudulent intent to appropriate it to such use or purpose," is erroneous, and should not have been given, for the reason that there is no charge in the information that defendant ever secreted anything with a fraudulent intent or secreted it at all, and it is contended that it was saying to the jury that if they found defendant had secreted certain property, even though he had not appropriated it to his own use or deprived the owner of its use, they might convict him of embezzlement. There is no merit in this contention, as the court instructed the jury that this prosecution was under the provisions of said section and simply quoted the section to them. It was held in *State v. Baumhager*, 28 Minn. 226, 9 N. W. 704, in a case of embezzlement, that the first possession of the property alleged to have been embezzled being lawful, the act of embezzlement consists, in a certain sense, in a mere act of the mind, without any outward and visible trespass as in the case of ordinary

larceny, and that this act of fraudulent appropriation has taken place may be inferred from the conduct of the defendant. The secretion would be at most only evidence of the intent as distinguished from the offense. It necessarily follows that in a charge of this nature, evidence of secretion would be competent to determine intent, and that an instruction in the language of the statute was entirely proper. It is provided by sec. 7071, Rev. Codes, that a distinct act of taking is not necessary to constitute embezzlement. The defendant is charged with wilfully, unlawfully, feloniously and fraudulently embezzling said checks "to a use and purpose not in the due and lawful execution of his said trust." The court did not err in giving said instruction.

The last specification of error is based on the refusal of the court to grant defendant's motion for a new trial. From the whole record we do not think the court erred in denying said motion.

Certain errors are assigned in regard to the admission of evidence. One witness was permitted to testify that he found irregularities in the books of said bank, and was also permitted to testify that he found evidence of the draft drawn on the New England National Bank of Kansas City. While the evidence referred to was wholly irrelevant and immaterial, we do not think it was so prejudicial to the rights of the defendant as to warrant the granting of a new trial.

Other errors are assigned which we have examined, but do not consider it necessary to pass upon each of such assignments separately in this opinion. After a careful examination of such assignments, we do not find any error in the action of the court that would warrant the granting of a new trial.

The judgment must be *affirmed,* and it is so ordered.

Stewart, C. J., and Ailshie, J., concur.

Petition for rehearing denied.